# AB v. CD

*Swope, Brown & Swope,* for plaintiff.

SHEELY, P. J., October 28, 1950.—The complaint in this case charges indignities to the person of plaintiff rendering his condition intolerable and his life burdensome. The parties were married on November 29, 1940, and lived together until January 11, 1949, during which time two children were born. There is no evidence of any disputes or difficulties prior to January 11, 1949. Plaintiff's case depends upon what occurred on that date and thereafter.

Plaintiff was employed by the Pennsylvania Department of Highways and spent a great deal of time away from home, often being home just over weekends. Defendant became friendly with an athletic director employed at a nearby school and they spent a great deal of time together engaging in various sports often at

the expense of defendant neglecting her children and her household duties. On January 11, 1949, plaintiff returned home unexpectedly and found defendant and her friend engaged in an act of sodomy. Plaintiff ordered the friend from the house and defendant left with her and did not return. Thereafter defendant and her friend continued to be constantly in each other's company and spent sometime living together at a cottage belonging to defendant's mother. Two witnesses were called who testified to the fact that the relationship between defendant and her friend was the subject of gossip throughout the community and that the circumstances were rather common knowledge. Defendant did not appear and no testimony was offered on her behalf.

"What is sufficient to support a decree under the section of the statute relied on has been variously stated and necessarily includes a wide range of conduct. 'It is not of a single act that the law speaks in the clause under which this case falls, but of such a course of conduct or continued treatment as renders the wife's (husband's) condition intolerable and her (his) life burdensome.' Richards v. Richards, 37 Pa. 225": Wick v. Wick, 352 Pa. 25, 28 (1945).

From this rule it would follow that the single act testified to would not constitute indignities to the person of plaintiff as it did not consist of a "course of conduct or continued treatment". In fact, it may well be doubted whether a series of acts of sodomy, committed secretly, would constitute indignities to the person of plaintiff.

"The mere commission of an act which constitutes a criminal offense, does not necessarily amount to indignities to the person. It is the manifestation of hatred, estrangement or disdain toward the spouse, expressed by the sexual offense, in gross circumstances of affront, which is thus to be condemned. It follows that

the commission of other crimes, manifesting merely a disregard of social duty, rather than hatred, estrangement or disdain toward the libellant, cannot be characterized as an indignity to the spouse": 1 Freedman on Divorce, page 759.

Thus, the act complained of, standing alone, is not cause for divorce under the laws of Pennsylvania. Plaintiff's case must therefore stand upon the other circumstances testified to. These circumstances show an extremely close relationship between defendant and her friend both before and after January 11, 1949. We can surmise that the act testified to was not the only act committed. When they were apprehended and plaintiff ordered the friend from the house defendant elected to go with her although the testimony does not indicate that she was ordered to do so. Had she left because of remorse it is reasonable to suppose that she would have returned and sought forgiveness and a reconciliation. Instead, she openly continued her association with her friend and they lived together at her mother's cottage during all of which time their relationship had become a matter of common gossip. From this we may infer that she preferred the companionship of her friend to that of her husband and family. In Wick v. Wick, 352 Pa. 25, 28 (1945) the court said:

" 'What is meant by such indignities is left undefined in the law, and depends largely upon the circumstances of each case; they must consist of such a course of conduct as is humiliating, degrading and inconsistent with her (his) position and relations as a wife (husband).' "

Certainly the conduct of defendant in this case, with the resulting gossip, was humiliating and degrading to plaintiff and was inconsistent with his position and relationship as a husband. Such conduct, considered with the evidence of the overt act, would constitute a manifestation of estrangement and disdain toward the husband. As stated in 1 Freedman, page 763:

"It is not the affection which the respondent entertains for other men (women) which constitutes indignities to the person of the libellant; it is her conduct resulting from this affection, exhibited in the presence of the libellant and of strangers, which constitutes indignities to his person."

The situation presented, in view of the gossip, was very similar to that of a husband paying attention to other women, as to which President Judge Keller said:

"Conduct by a husband with respect to other women, although not sufficient to support a charge of adultery, may be considered as a form of personal indignity to his wife rendering her condition intolerable and life burdensome": Lowe v. Lowe, 148 Pa. Superior Ct. 439 (1942) (syllabus).

In Blansett v. Blansett, 162 Pa. Superior Ct. 45, 48 (1948), Judge Dithrich said:

"Respondent's course of conduct was humiliating, degrading, and so notorious as to make her husband the laughing stock of his fellow-employees. That is one thing a normal individual cannot stand for, and should not be made to stand for, no matter what indignities he may be required to endure before the stage is reached 'beyond which human indulgence cannot be expected to submit'."

Considered in this light plaintiff's charge of indignities to the person is sustained by the testimony. We note, however, that the complaint filed in this action fails to comply with the Rules of Civil Procedure in three respects: the citizenship of defendant is not alleged, as required by Pa. R. C. P. 1126(3); the complaint is not signed by counsel, as required by Pa. R. C. P. 1023; the date and place of marriage is not alleged, as required by Pa. R. C. P. 1126(5). While these defects may be minor, a decree of divorce, particularly in an uncontested case, should be based upon a complaint which complies strictly with the Rules of Civil

Procedure. The omission of necessary averments cannot be supplied by the testimony.

And now, October 28, 1950, the report of the master in the above case is approved and a decree of divorce will be filed upon the filing by plaintiff of an amended complaint complying with the Rules of Civil Procedure as herein indicated, leave for the filing of which is hereby granted.